**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff - Appellee,<br><br>  v.<br><br>MOLSON COORS BEVERAGE COMPANY USA LLC,<br><br>    Defendant - Appellant. | No. 23-3142<br><br>D.C. No.<br>3:18-cv-00331-BEN-MDD<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted November 19, 2024
San Jose, California

Before: GRABER, FRIEDLAND, and BUMATAY, Circuit Judges.

Molson Coors Beverage Company appeals a variety of rulings from the district court after a jury awarded $56 million to Stone Brewing Company for trademark violation under the Lanham Act. We have jurisdiction under 28 U.S.C § 1291 and affirm.

---

   * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1.  Molson Coors first appeals the district court's determination that laches does not bar Stone Brewing's Lanham Act claims.  The duration of the laches clock here is four years.  *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (holding that the duration of the laches clock is determined by looking to the statute of limitations period for the "most closely analogous action under state law" (quotation marks omitted)); *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) ("California [has a] four-year statute of limitations for trademark infringement actions.").

The laches clock began running in 2017 when Molson Coors launched its "Own the Stone" marketing campaign.  *See Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (The laches clock begins when the plaintiff "knew (or should have known) of the allegedly infringing conduct."). Pre-2017 usage is not the basis for any part of Stone Brewing's claims.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) (holding that laches is "triggered if any part of the claimed wrongful conduct occurred beyond the limitations period").  Rather, all of Stone Brewing's claims relate to the 2017 "Own the Stone" campaign.  Pre-2017, Molson Coors never referred to Keystone as "anything other than Keystone in packaging[,] marketing[,] or advertising materials," never broke up the product name "Keystone," and used the term "Stones"

just to refer to the number of beers in the case ("30 stones") or, in the plural sense, as a catch phrase (for example, "Hold my Stones").  Stone Brewing brought this suit within the four-year statute of limitations.

2.  We review the denial of judgment as a matter of law *de novo*, *Fifty-Six Hope Rd. Music v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015), and any factual findings and determinations on the likelihood of confusion for clear error, *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017), *abrogated in part on other grounds as recognized by Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 38 (9th Cir. 2022).  "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (citation and internal quotation marks omitted).  To win on its Lanham Act trademark infringement claim, Stone Brewing had to prove "(1) that it ha[d] a protectible ownership interest in the mark; and (2) that [Molson Coors's] use of the mark [was] likely to cause consumer confusion."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quotation marks omitted).

The district court did not err in refusing to set aside the jury verdict on the ground that Molson Coors had a superior interest in the "Stone" mark.  Stone

23-3142

Brewing applied to register the "Stone" trademark on April 4, 1996, and, despite Molson Coors's claim of prior use, substantial evidence supported a conclusion that Molson Coors did not approve the production of packaging that used "Stone" before that date.

The district court also did not err in refusing to set aside the jury verdict on likelihood of confusion. The question of consumer confusion "asks whether a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing one of the marks." *Stone Creek*, 875 F.3d at 431 (quotation marks omitted). We consider several factors to assess confusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).

First, Stone Brewing provided some evidence from which a jury could plausibly conclude there was "actual confusion" by distributors and customers who thought that Keystone Light was sold by Stone Brewing. Stone Brewing also presented survey evidence purportedly demonstrating consumer confusion based on images that appeared on Molson Coors' branding and packaging. The jury was free to consider that information.

Second, as to similarity of the marks, Molson Coors expressly de-emphasized "Keystone" and instead highlighted "Stone" in its 2017 product refresh. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (holding that similarities between marks are "weighed more heavily than

differences").

Third, as to proximity of the goods, the brands compete in the "beer space," are sold in the same aisle of grocery stores, and have registered marks (or in Molson Coors's case, attempted to register marks) under the same category of "beers and ales."

Fourth, the brands use the same marketing and distribution channels. And both products are sold at the same restaurants and grocery stores, often in the same aisle.

Fifth, "[l]ow consumer care increases the likelihood of confusion," and more expensive products generate greater care. *Network Automation*, 638 F.3d at 1152 (alteration and citation omitted). Beer is a relatively inexpensive product. And although the per-unit price of Stone IPA and Keystone Light differ, their prices are, overall, similar.

Reviewing all the factors, a reasonable jury could find that Molson Coors's 2017 product refresh of Keystone Light was likely to cause consumer confusion.

3. Molson Coors also challenges several evidentiary rulings and the district court's denial of Molson Coors's motion for a new trial. Denial of a motion for a new trial is reviewed for abuse of discretion. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) (per curiam). We review for abuse of discretion the district court's decision to admit expert testimony. *United States v. Valencia-Lopez*, 971 F.3d 891,

897 (9th Cir. 2020). The district court did not abuse its discretion.

Molson Coors first alleges that there must be a new trial because the district court allowed survey evidence into the record that featured "altered" images of Keystone Light showing the word "Stone" by itself. But the packaging in which the cans were sold *did* feature the word "Stone" on a can in relative isolation. And *cases* of Keystone Light, as well as several advertisements released by Molson Coors, showed images of the can as the survey described.

Molson Coors next argues that the studies offered as evidence by Stone Brewing supported a theory of trademark dilution rather than trademark infringement. But reverse confusion, which supports a theory of trademark infringement, occurs when a consumer "mistakenly thinks that the senior user is the same as or is affiliated with the junior user." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021). Stone Brewing consistently argued that consumers were confused as to the origin of Keystone Light and that the "negative attributes of Keystone were transferred to Stone *from this confusion of source*."

Finally, Molson Coors argues that the district court erred in allowing Dr. Palmatier to present his "brain node" theory on consumer habits, which came from his peer-reviewed textbook. But "publication in peer reviewed literature, and general acceptance" favors admission of testimony under Federal Rule of Evidence 702. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The court properly

admitted Dr. Palmatier's testimony.

4. Finally, Molson Coors challenges the damages awarded by the jury. We review for abuse of discretion the district court's denial of remittitur. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). "[A] jury's award of damages is entitled to great deference." *In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006). "In reviewing a jury's damages award, we must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (quotation marks omitted). Once a district court has "upheld a jury award in denying a motion for a new trial, such a ruling is 'virtually unassailable.'" *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012) (quoting *Kode*, 596 F.3d at 612).

Stone Brewing sought damages in three categories: $32.7 million for past lost profits, $141.4 million for future lost profits, and $41.8 million for corrective advertising. The jury returned a verdict for Stone Brewing of $56 million in general damages—roughly one quarter of requested damages—without indicating what portion of the award came from which category.

Molson Coors argues that remittitur is appropriate because Stone Brewing's "Arrogant Bastard Ale" is not sold under the Stone brand name. But evidence in the

23-3142

record indicated that consumer confusion about the Stone brand impacted Stone Brewing's other brands as well. Further, Molson Coors's argument that Stone Brewing cannot recover past lost profits as a matter of law is not compelling for the same reasons given with respect to the dilution versus infringement argument above. Next, Molson Coors argues that Stone Brewing cannot recover future lost profits because no other court has awarded speculative future lost profits, but, in *Oracle*, we upheld a damages calculation that considered a lost future "ongoing stream of revenue from [the infringed upon company's] former customers." 765 F.3d at 1094. Similarly here, Stone Brewing provided expert testimony that estimated how long it would take Stone Brewing to recover its sales after corrective advertising. The jury could reasonably rely on the expert's calculation to determine that Stone Brewing's sales would not recover immediately. Finally, Molson Coors argues that a 25 percent cap must be applied to the corrective advertising damages, but we have never adopted a 25 percent cap. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 n.2 (9th Cir. 1995) (acknowledging the 25 percent cap but declining to adopt it).

**AFFIRMED.**

23-3142